IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 23-345 |
| CORY BROOKINS | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, J. Jeanette Kang, Assistant United States Attorney for the District, and Alexander B. Bowerman, Special Assistant United States Attorney for the District, respectfully submits this sentencing memorandum regarding defendant Cory Brookins.

I.   **BACKGROUND**

In late 2020 and early 2021, defendant Cory Brookins participated in a conspiracy in which members of the conspiracy purchased firearms in South Carolina and transported them to Philadelphia for resale. On August 9, 2023, the defendant was charged by indictment with conspiracy to engage in the business of dealing firearms without being licensed to do so, and to make false statements to a federally licensed firearms dealer, in violation of 18 U.S.C. § 371 (Count One); and dealing in firearms without a license, and aiding and abetting, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 2 (Count Two). On November 11, 2023, the defendant pled guilty to both counts charged in the indictment in accordance with a plea agreement between the parties. A sentencing hearing is scheduled for February 12, 2024 at 9:30 a.m.

The government explains below its view of the proper sentencing considerations in this

case, including the advisory range under the Sentencing Guidelines and the § 3553(a) factors. The government recommends that the Court impose a sentence of imprisonment at the low end of the applicable guideline range.

## II. FACTS OF THE CASE

The facts of this case are detailed in the Government's Change of Plea Memorandum, dated October 30, 2023. In summary, beginning around November 2020, Ontavious Plumer, charged elsewhere, directed Charlena West and Earlishia Brownlee, each charged elsewhere, to straw purchase firearms in South Carolina so that they could be resold in Philadelphia. West transported the firearms to Philadelphia and delivered them to other members of the conspiracy, primarily Terrance Darby, charged elsewhere. On one occasion, she delivered the firearms to the defendant. The recipients of the straw-purchased firearms would illegally resell or otherwise transfer the firearms and pay Plumer, who was incarcerated in a South Carolina prison, either by giving cash to West, or by sending money on Cash App or Zelle. The members of the conspiracy straw-purchased a total of at least 57 firearms. Those firearms are described in detail in the Change of Plea memorandum.

In connection with each firearm purchase, the defendant's co-conspirators completed an ATF Form 4473, as required by law, and falsely certified on these forms that they were the actual purchasers of these firearms. In reality, they were not buying these firearms for themselves—instead, they were purchasing these firearms at the direction of Ontavious Plumer, knowing that these firearms would be transported to Terrance Darby and others in Philadelphia, Pennsylvania, including the defendant, Cory Brookins. Neither the defendant nor any other member of the conspiracy held a federal firearms license. And each one of the firearms passed in interstate and/or foreign commerce, as each one of the firearms was manufactured and/or sold by

a federal firearms licensee outside of Pennsylvania and then transported to Philadelphia.

Evidence gathered during the ATF investigation of the conspiracy demonstrated that the defendant was a member of the conspiracy and knew of its objectives, and that the defendant engaged in the business of dealing in firearms. The defendant received one delivery of firearms from Charlena West on or about January 27, 2021, which he then illegally resold or otherwise transferred. Call detail records show that the defendant and West communicated by telephone on that date, and cell site data indicates that West traveled to Philadelphia on that date. The government obtained text messages between the defendant and both Ontavious Plumer and Terrance Darby about buying and selling firearms, including messages containing photographs of firearms purchased by West and Earlishia Brownlee at Plumer's direction. And the defendant told Plumer by telephone that he sold firearms he received from West. In addition, Cash App records show the defendant made payments to accounts attributable to both Darby and Plumer during the course of the conspiracy.

Of the 57 firearms purchased by members of the conspiracy, approximately 16 have been recovered by law enforcement. All of those firearms were recovered in or near Philadelphia, and many of these firearms were found in connection with crimes. *See* PSR ¶ 11. One of these firearms—a Ruger Security-9 semiautomatic pistol bearing Serial Number 383-61872—was possessed by Atif Stockton, who pled guilty to being a felon in possession of a firearm and was sentenced by this Court. *See* PSR ¶ 11 & n.2; *see also United States v. Stockton*, Crim. No. 21-289-HB.

## II.   SENTENCING GUIDELINES CALCULATION

### A.   Statutory Maximum Sentence

The maximum penalty for a violation of Title 18, United States Code, Section 371

(criminal conspiracy) is 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment. The maximum penalty for a violation of Title 18, United States Code, Section 922(a)(1)(A) (dealing in firearms without a license) is 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment. Thus, the total maximum penalty is 10 years' imprisonment, a 3-year period of supervised release, a $500,000 fine, and a $200 special assessment. Forfeiture of the firearms involved in the offense also may be ordered.

      **B.**      **Sentencing Guidelines Calculation**

The Presentence Investigation Report ("PSR") correctly calculates the defendant's guideline range at 30-37 months' imprisonment. The base offense level under Section 2K2.1 of the Sentencing Guidelines is 14 because the defendant was a prohibited person at the time the defendant committed the instant offense (due to the defendant's 2010 conviction for insurance fraud under 18 Pa. Cons. Stat. § 4117(b), a first-degree misdemeanor punishable by up to five years in prison), and the defendant committed the instant offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person. PSR ¶¶ 24, 37. A six-level enhancement applies because the defendant participated in a conspiracy involving between 25 and 99 firearms (specifically, about 57 firearms), and a four-level enhancement applies because the defendant engaged in the trafficking of firearms. PSR ¶¶ 25-26. Because the defendant received only one shipment of firearms during the course of the conspiracy, the parties stipulated that the defendant was a "minor participant" in the conspiracy such that a two-level downward adjustment applies. PSR ¶ 28. With a three-level reduction for acceptance of responsibility, the total offense level is 19. PSR ¶¶ 32-33.

The defendant has the following adult criminal convictions. On May 16, 2005, the defendant was found guilty in the Philadelphia County Court of Common Pleas of possession of a controlled substance, and he was sentenced to 3-6 days of imprisonment and six months of probation. PSR ¶ 35. On October 1, 2007, the defendant was found guilty in the Abbeville Municipal Court in Abbeville, South Carolina of driving without a license, use of another's altered license/identification card, and giving false information, and he was ordered to pay fines and costs. PSR ¶ 36. On October 18, 2010, the defendant pled guilty in the Municipal Court of Philadelphia County to insurance fraud, and the court imposed no further penalty. PSR ¶ 37. None of these convictions results in any criminal history points. Finally, on June 26, 2016, the defendant pled guilty to assault and battery and possession of 28 grams or less of marijuana, and he was sentenced to time served and ordered to pay fines and costs. This conviction results in one criminal history point and a criminal history category of I. PSR ¶¶ 38-40. Accordingly, the guideline imprisonment range applicable to the defendant is 30-37 months. PSR ¶ 74.

**III.    GOVERNMENT'S RECOMMENDATION CONCERNING SENTENCING**

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must also consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate

deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1] Restitution is not an issue in this case.

### 1. The nature and circumstances of the offense, and the history and characteristics of the defendant.

Firearms trafficking is a serious crime. In total, the members of the conspiracy are responsible for bringing at least 57 illegal firearms into the city of Philadelphia. The city of Philadelphia, and the rest of this country, has been experiencing an unprecedented surge in illegal guns and gun violence. The defendant directly contributed to this problem by receiving straw-purchased firearms from South Carolina and reselling them in Philadelphia.

That said, the defendant's role in the conspiracy was smaller than other members of the conspiracy. The defendant received a delivery of approximately seven firearms on or about January 27, 2021, and he was present during another delivery on or about January 18, 2021. Around the times of these two deliveries, he communicated with Ontavious Plumer and Terrance

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

Darby about the straw-purchased firearms by text message (including text messages containing photographs of some of the straw-purchased firearms), and he told Plumer by phone that he resold the firearms he received. But the defendant does not appear to have received or resold firearms from any of the other deliveries West made during the course of the conspiracy—at least six deliveries for a total of 57 firearms. These facts weigh in favor of a lower sentence, as reflected by the two-level downward minor-participant adjustment applied to the calculation of the defendant's offense level.

The Court should consider that this defendant has a relatively minor criminal history, with no sentences of imprisonment greater than one week and no criminal history within the past five years. The defendant cares for his minor children in partnership with their mother. The children live with him during the week, and he takes them to school every morning. The children's mother reports that the defendant is "a really good father." PSR ¶¶ 49, 52. The defendant earns income from residential rental properties, and is working on renovating other rental properties as well as a small business (a lounge). PSR ¶¶ 66-67. Together, the facts regarding the defendant's role in the offense, and his history and circumstances, support a sentence at the low end of the applicable guideline range.

    **2.**    **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

As stated above, the defendant participated in a conspiracy involving serious crimes, resulting in at least 57 illegal firearms being trafficked into Philadelphia. While he was involved with only a minor portion of the illegal firearms transactions in the conspiracy, the defendant furthered the conspiracy's objectives, agreeing to receive firearms from South Carolina and help re-sell them in Philadelphia. The government submits that a sentence at the low end of the

7

applicable guideline range will adequately account for the seriousness of the defendant's conduct, while also acknowledging his acceptance of responsibility and his history and circumstances.

>   **3.     The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct. An adequate sentence will aim to both deter the defendant from committing future crimes and deter others who think about engaging in similar conduct.

The government submits that its recommended sentence will provide adequate deterrence in this case. The defendant has never served longer than 6 days in prison—a term of incarceration at the low end of the Guidelines Range will be sufficient, but not greater than necessary, to help ensure that this defendant is deterred from committing this type of offense again. He became involved in this conspiracy because of his connections with Terrance Darby, the defendant's cousin, and Ontavious Plumer. *See* PSR ¶ 21. Both Darby and Plumer have been sentenced to significant terms in federal prison for their conduct. The defendant is also now prohibited from purchasing or possessing firearms, and will remain prohibited after serving his sentence in this case.

The defendant, who is 53 years old, is able to maintain stable income. He has worked as a mechanic since 2014, and he owns properties, including a rental property. He is also the primary caretaker for his children, including his adult son with special needs. PSR ¶¶ 48, 51, 52, 90. All this reduces the likelihood that he will reoffend. The government submits that a sentence at the low-end of the applicable guideline range—which would be orders of magnitude greater than any sentence the defendant has ever served—is sufficiently serious to serve the need for specific and general deterrence.

> **4.    The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The Court must also consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care, or additional treatment that cannot be adequately addressed by the Bureau of Prisons during imprisonment.

> **5.    The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Here, as in most cases, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders. The government's recommended sentence is within the applicable guideline range and consistent with a careful consideration of the § 3553(a) factors relevant to the defendant.

V.      **CONCLUSION**

For all of these reasons, the government respectfully recommends that Court impose a sentence of imprisonment at the low end of the applicable Sentencing Guidelines range, along with a 3-year period of supervised release and a $100 special assessment.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

ALEXANDER B. BOWERMAN
Special Assistant United States Attorney
J. JEANETTE KANG
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic mail upon:

>Qawi Abdul-Rahman, Esq.
>justusseeker@gmail.com
>*Counsel for Cory Brookins*

_____
ALEXANDER B. BOWERMAN
Special Assistant United States Attorney

Date:  February 5, 2024